IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SAVANNAH INTELLECTUAL PROPERTY LLC**, a Pennsylvania Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>**H2OME CERTIFIED, INC.**, an Oregon corporation doing business as Home Certified, Inc.,<br><br>Defendant. | Case No. 3:24-cv-00316-AR<br><br>**OPINION & ORDER ADOPTING F&R WITH CLARIFICATION** |

James L. Hiller, Hitt Hiller Monfils Williams LLP, 411 SW 2nd Ave, Suite 400, Portland, OR 97204-3408, Devan V. Padmanabhan, Padmanabhan & Dawson PLLC, 9800 Shelard Parkway, Suite 120, Minneapolis, MN 55441, Louis Mark Heidelberger, The Law Offices of Louis M. Heidelberger Esquire LLC, 1229 Laurel Oak Lane, York, PA 17403. Attorneys for Plaintiff.

Jeffrey S. Love and Todd M. Siegel, Klarquist Sparkman, LLP, One World Trade Center, 121 SW Salmon Street, Suite 1600, Portland, OR 97204, Peter J. Viteznik, Kilmer Voorhees & Laurick, PC, 2701 NW Vaughn St., Suite 780, Portland, OR 97210. Attorneys for Defendant.

**IMMERGUT, District Judge.**

On August 13, 2025, Judge Armistead issued his Findings and Recommendation ("F&R"), ECF 57, recommending this Court grant Defendant's Motion for Summary Judgment ("MSJ"), ECF 20, because Plaintiff's patents claimed ineligible subject matter. F&R, ECF 57 at 2. Both parties objected to Judge Armistead's F&R, Plaintiff's Objections, ECF 63; Defendant's Objections, ECF 62, and responded to the other's objections, Plaintiff's Response, ECF 64; Defendant's Response, ECF 65. This Court held a hearing on Plaintiff's Objections, ECF 63, on January 16, 2025, ECF 69. Based on that hearing and the reasons stated below, this Court ADOPTS IN FULL Judge Armistead's F&R, ECF 57 with clarification.

## STANDARDS

Under the Federal Magistrates Act ("Act"), as amended, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The court "may also . . . recommit the matter to the magistrate judge with instructions." *Id.* If a party objects to a magistrate judge's F&R, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* But the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the F&R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149–50 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Nevertheless, the Act "does not preclude further review by the district judge, *sua sponte*" whether de novo or under another standard. *Thomas*, 474 U.S. at 154.

## DISCUSSION

This Court has reviewed Judge Armistead's F&R de novo and accepts Judge Armistead's conclusion that the asserted claims across the three patents are directed to ineligible subject matter under 35 U.S.C. § 101. Further, this Court recognizes that even if the claims were directed

to eligible subject matter as described by Plaintiff, the claims were obvious in light of the prior art and unpatentable under 35 U.S.C. § 103.

**A.  Subject Matter Eligibility under § 101.**

Judge Armistead concluded, first, that the asserted claims are directed to natural phenomena—evaporation, condensation, wind, and heat—and mental processes. F&R, ECF 57 at 19. Second, Judge Armistead concluded that the claims do not amount to more than applications of abstract ideas and natural laws themselves.[1] *Id.* at 22. This Court agrees. At the hearing, Plaintiff stated that timing is the invention. That is, the invention is the timing of drying wood framing in a preventative approach rather than a reactive approach. Whether this characterization is described as an abstract idea or a natural phenomenon, this Court is not persuaded that the timing of preventative drying without more is patentable. This Court therefore adopts Judge Armistead's F&R and finds that the patents claim ineligible subject matter under § 101.

**B.  Obviousness under § 103**

A patent claim is invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).[2]

---

[1] The F&R states that "the claims do amount to more than applications of the abstract ideas and natural laws themselves." *Id.* at 22. The parties agree that the word "not" was inadvertently omitted before the word "amount. Defendant's Objections, ECF 62 at 17; Plaintiff's Response, ECF 64 at 6. This Court agrees and amends the F&R to read "the claims do not amount to more than applications of the abstract ideas and natural laws themselves."

[2] The effective filing date of Plaintiff's patents predates the effective date of the America Invents Act ("AIA"), so this Court references the pre-AIA version of 35 U.S.C. § 103. MSJ, ECF 20 at 7 n.1; *see Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 958 n.1 (Fed. Cir. 2014).

"Obviousness is a question of law with underlying factual findings relating to the scope and content of the prior art; differences between the prior art and the claims at issue; the level of ordinary skill in the pertinent art; the presence or absence of a motivation to combine or modify prior art with a reasonable expectation of success; and any objective indicia of non-obviousness." *B/E Aerospace, Inc. v. C&D Zodiac, Inc.*, 962 F.3d 1373, 1379 (Fed. Cir. 2020). "The analysis is objective." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). "The patent challenger must establish obviousness by clear and convincing evidence." *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1295 (Fed. Cir. 2012) (citing *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91 (2011)).

For the obviousness analysis, this Court assumes for the sake of argument that the patents claim the subject matter described by Plaintiff at oral argument before this Court. So, this Court assumes that Plaintiff's patents claim a construction method for preventing structural damage or growth of mold or mildew in new construction. This Court also assumes that the invention is the timing of this process as a preventative rather than a reactive approach.

C. The Scope and Content of the Prior Art

Defendants argue that all asserted patent claims are invalid as obvious in view of two primary prior art references: *Guidelines for On-Site Measurement of Moisture in Wood Building Materials* (2001); and IICRC S500, *Standard and Reference Guide for Professional Water Damage Restoration* (1999). MSJ, ECF 20 at 6. Plaintiff does not challenge that these references are prior art. Plaintiff's Opposition to Motion for Summary Judgment ("MSJ Opp'n"), ECF 35 at 17.[3] This Court describes each reference below.

---

[3] MSJ Opp'n, ECF 35 at 17 ("Plaintiff will address what Defendant asserts as 'admitted' prior art irrespective of whether the references qualify as prior art in view of the fact they do not invalidate the patents in suit in any event.").

First, Defendant identifies the *Guidelines for On-Site Measurement of Moisture in Wood Building Materials* (September 2001) ("CMHC Guidelines"). The CMHC Guidelines were developed to "assist in understanding how moisture in wood products can be measured in the field." Declaration of Brandon Burton ("Burton Decl.") Ex. 1, ECF 21-1 at 75. The National Building Code of Canada specified that lumber be dry at the time of installation in buildings. *Id.* Dry meant that the lumber had "a maximum moisture of 19 [percent] on a dry weight basis." *Id.* The time of installation meant when "the framing stage is completed and the vapour barrier and interior finishes are applied." *Id.* at 92. The CMHC Guidelines specify that "[t]he issue of high moisture content in construction lumber is not new," *id.*, and they identify the problem that wood was rewet during construction. *Id.* at 77. This problem was exacerbated by "[f]aster construction times," which left less time for "gradual drying of the standing wood frame structure." *Id.* at 76.

The CMHC Guidelines echo many of the limitations in the present invention. They teach measuring moisture content readings of wall studs in two sampling locations, low and mid height. *Id.* at 90. They also encourage internal drying before the internal vapor barrier and gypsum wallboard is applied. *Id.* at 93. The CMHC suggest using translucent sheathing membranes to cover window and door openings, whether or not such membranes are used for the rest of the wall. *Id.* at 96. The CMHC Guidelines recommends using "industrial dehumidification equipment that is sometimes used in rehabilitation of flooded buildings" or installing heat recovery ventilators early to dehumidify the structure. *Id.* at 97.

Second, Defendant identifies *IICRC S500 Standard and Reference Guide for Professional Water Damage Restoration*, Second Edition (1999) ("IICRC S500"). The IICRC S500 standards discloses the principles of drying as relevant to "water-damaged structures and materials." Burton Decl. Ex. B, ECF 21-1 at 120. Those principles include evaporation, dehumidification,

and temperature control. *Id.* at 120–21. The equipment to be used, as disclosed by the IICRC S500's reference guide, includes moisture meters, "air movers," dehumidifiers, and "supplemental heaters." *Id.* 157–60.

### D. The Level of Ordinary Skill in the Art

A person of ordinary skill in the art (a "POSITA") "is a hypothetical person who is presumed to know the relevant prior art." *In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995). A court may consider many factors in determining the ordinary level of skill in the art. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666–67 (Fed. Cir. 2000).[4] One such factor is "the types of problems encountered in the art." *Id.*

Defendant's expert submits that a person having ordinary skill in the art ("POSITA") in July 2003 "would be knowledgeable in the area of structural drying, particularly in the concepts used and understood in the field of water damage restoration that had existed for many decades prior to July of 2003". Burton Decl., ECF 21 ¶ 19. Plaintiff's expert submits that a POSITA "would be a tradesperson with a minimum of two to three years of residential wood framing inspection experience, knowledge and experience using hand tools and measuring tools, and a working knowledge of wood behavior." Declaration of Andrew Weisenberger ("Weisenberger Decl."), ECF 38 ¶ 11.

This Court finds that Plaintiff's description of a POSITA is more closely aligned with the art at issue in Plaintiff's patents. For the obviousness analysis, this Court assumes that the patent is directed to a preventative drying process at the framing stage of construction. Based on that assumption, a POSITA in residential wood framing inspection likely would encounter the types

---

[4] *Ruiz*, 234 F.3d at 666–67 ("Factors that may be considered in determining the ordinary level of skill in the art include: 1) the types of problems encountered in the art; 2) the prior art solutions to those problems; 3) the rapidity with which innovations are made; 4) the sophistication of the technology; and 5) the educational level of active workers in the field.").

PAGE 6 – OPINION & ORDER ADOPTING F&R WITH CLARIFICATION

of problems in new construction that the CMHC guidelines and Plaintiff's patent were trying to solve—excess moisture in wood used in new construction.

Even adopting Plaintiff's view, this Court finds that a POSITA would still be familiar, as a matter of experience and common sense, with methods of drying, including the use of dehumidifiers, heaters, and fans. Additionally, a POSITA would be familiar with drying methods for structural water damage restoration, and particularly IICRC S500. Plaintiff does not challenge it as prior art, and the problem a POSITA would be trying to solve is that the structural wood was wet. A POSITA would logically consult methods for drying structural wood, even if those were disclosed in a restorative rather than a preventative approach. In both approaches the problem is that the wood is too wet. The wood may be much more wet in a restorative approach, but that is a difference of degree, not a difference in kind. It is common sense that, in both approaches, the principles of drying—evaporation, dehumidification, and temperature control—are the same.

E. Differences Between Prior Art and Claims & Motivation to Modify

In assessing the difference between prior art and the asserted claims, "a court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007). "[C]ommon sense serves a critical role in determining obviousness" *B/E Aerospace, Inc. v. C&D Zodiac, Inc*, 962 F.3d 1373, 1380 (Fed. Cir. 2020). Common sense can provide a missing limitation when "the limitation in question was unusually simple and the technology particularly straightforward." *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1362 (Fed. Cir. 2016). Common sense may also be used to provide a "motivation to combine" if "the 'improvement' is technology-independent and the combination of references results in a product or process that is more desirable." *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464

PAGE 7 – OPINION & ORDER ADOPTING F&R WITH CLARIFICATION

F.3d 1356, 1368 (Fed. Cir. 2006). "[A] patent can be obvious in light of a single prior art reference if it would have been obvious to modify that reference to arrive at the patented invention." *Arendi S.A.R.L.*, 832 F.3d at 1361.

The asserted claims from the three patents in this case are generally comprised of three steps with varying amounts of specificity. First, one must measure the moisture content of the wood framing in new construction with a moisture meter. Next, one must dry the space with a commercially available drying device placed within the building. Third, one must measure again the moisture content of the wood framing in new construction with a moisture meter to confirm that the moisture content is below the moisture content level. The Court is persuaded that Defendant has established by clear and convincing evidence that each step of this process is obvious in light of the prior art. Plaintiff has not presented evidence to create a material dispute of fact on this issue. By way of example, this Court compares the prior art to the steps listed in claim 1 of the '023 patent.

*First*, the timing of Plaintiff's first step to measure the moisture content of wood framing with a moisture meter is not new. This step was anticipated by the CMHC Guidelines. The CMHC Guidelines recognized, as a matter of law in Canada, that the moisture content level of a building had to be certified at the time of installation, when the framing stage is completed and the vapor barrier and interior finishes are applied. Burton Decl. Ex. B, ECF 21-1 at 75, 92. The CMHC guidelines also teach using a moisture meter on wall studs at both low and mid height. *Id.* at 90. Plaintiff responds that these guidelines are "[n]ot applicable to new construction" and that wood framing depicted in the CMHC Guidelines is partially covered by drywall. Weisenberger Decl. Ex. A, ECF 38-1 at 2. This Court does not find those arguments meaningful. True, the CMHC Guidelines do not use the term "new construction." Still, "construction"

generally includes both new and old construction. There is no evidence in the record that "new construction" was exempted from requirements of the National Building Code of Canada, and such a distinction is not probable. The CMHC Guidelines cover new construction. Plaintiff's second point, that the CMHC Guidelines depict measurements taken after wallboard is applied, is correct, *id.* (excerpting Burton Decl. Ex. 1, ECF 21-1 at 91), but Plaintiff fails to account for what else the CMHC Guidelines disclose. The CMHC Guidelines also state that "significant portions of the framing can be closed in" while leaving unfinished "those sections which require longer natural or induced drying." Burton Decl. Ex. 1, ECF 21-1 at 92. The Guidelines therefore contemplated drying before portions of the framing were finished. The limitation to measure the wood framing with a moisture meter before wallboard is either anticipated by the CMHC Guidelines or obvious in light of the Guidelines' suggestion to dry wood framing "unfinished."

*Second*, the use of a drying device within the building was obvious as a matter of common sense once the need for drying had been identified. Plaintiff argues that the CMHC Guidelines teach early installation of Heat Recovery Ventilators to heat the building and promote drying or the use of large industrial dehumidifiers. Weisenberger Decl. Ex. A, ECF 38-1 at 3. Plaintiff argues that these solutions are less efficient than Plaintiff's claimed approach of using "a small dehumidifier that leverages the power of a standard electrical outlet." *Id.* at 4. Notably, Plaintiff does not claim "a small dehumidifier." Plaintiff claims "at least one drying device . . . located within the building while drying the space." '023 patent, col. 7 ll. 44–48, ECF 7-2. This Court finds this description includes a large industrial dehumidifier. Plaintiff has not directed this Court to evidence that would support a finding that a POSITA would understand "a drying device" to be limited to small appliances that leverage the power of a standard electrical outlet.

PAGE 9 – OPINION & ORDER ADOPTING F&R WITH CLARIFICATION

The use of a drying device is also obvious in view of combining the CMHC Guidelines with IICRC S500 because the CMHC Guidelines disclose the need for drying and IICRC S500 discloses the methods for drying. Plaintiff makes two arguments to the contrary, neither of which holds any water upon examination. First, Plaintiff argues that because IICRC S500's drying method is restorative and not preventative it follows that Plaintiff's preventative process cannot be obvious. MSJ Opp'n, ECF 35 at 23. However, it is incorrect to assume that a POSITA "attempting to solve a problem will be led only to those elements of prior art designed to *solve the same problem*." *KSR Int'l Co.*, 550 U.S. at 420 (emphasis added). IICRC S500 does not solve the same problem, but the problem is similar enough—the need to dry wood reactively rather than preventatively—that a POSITA would consult the methods for drying wood frame construction in IICRC S500.

This Court rejects Plaintiff's second argument that a POSITA would not be motivated to combine IICRC S500 with the CMHC Guidelines. Plaintiff argues there would be no motivation to combine because the CMHC Guidelines is an open drying system and the IICRC S500 is a closed drying system. MSJ Opp'n, ECF 35 at 24. This Court does not find this distinction persuasive. Drying in an open system may be less efficient than drying in a closed system, but anyone with experience with heaters, fans, or dehumidifiers understands that these appliances still work and dry in open spaces. In light of the CMHC Guidelines, a POSITA would have been motivated to try drying in new construction, which as Plaintiff explains is an inherently open space, *see* Weisenberger Decl. Ex. A, ECF 38-1 at 8. The use of fans, dehumidifiers, and heaters in the space would have been an obvious choice.

This Court recognizes that there may be non-obvious methods for drying new construction, but such a method is not at issue in this case. Plaintiff does not claim a particular

arrangement of drying devices. Plaintiff does not even claim select types of dehumidifiers, fans, or heaters. Plaintiff claims the ordinary and predictable use of dehumidifiers, fans, and heaters. This Court does not find Plaintiff has presented evidence to create a material issue of fact as to whether a POSITA would have known to use common fans, dehumidifiers, or heaters to solve the well-known problem of removing moisture. The Court finds the evidence in the record only supports one conclusion—a POSITA would use a fan, dehumidifier or heater to dry wood framing in new construction before wallboard is applied. Plaintiff explains why other solutions identified in the prior art are inferior to its invention. *See e.g.*, Weisenberger Decl. Ex. A, ECF 38-1 at 3–4, 11–12. Plaintiff has not provided sufficient evidence or explanation to create a material issue of fact as to why its solution was not obvious to a POSITA who would want to dry the framing of new construction.

*Third*, the final step in the process, to check the moisture level again, is common sense. Defendants do not need a prior art reference to show that a limitation instructing a POSITA to measure again after some duration of drying is obvious. Further, a POSITA applying the CMHC Guidelines in Canada would be required to check the wood again to ensure that they complied with the Canadian building code, *see* Burton Decl. Ex. 1, ECF 21-1 at 75. Otherwise, a POSITA would not know whether the lumber had a moisture content of 19 percent or less at the time of installation, as required by law.

In sum, the general measure-dry-measure process claimed by all the claims at issue in this case—exemplified by claim 1 of the '023 patent above—is obvious in light of the CMHC Guidelines and common sense. This Court finds that the invention at issue is simple, and that any limitation missing explicitly from the CMHC Guidelines was obvious to a POSITA in light of

PAGE 11 – OPINION & ORDER ADOPTING F&R WITH CLARIFICATION

the Guidelines and common sense. For the claims generally, Plaintiff has not produced evidence creating a material issue of fact otherwise.

*Next*, this Court addresses any additional limitations raised by the parties that are not covered by claim 1 of the '023 patent: the vapor barrier limitation and the moving of the drying device limitation. These limitations are obvious as explained below, and this Court finds that no other limitations in the asserted claims provide a meaningful basis for any of the asserted claims to be non-obvious.

The vapor barrier limitation in claim 1 of the '688 patent and claim 1 of the '200 patent is obvious. After the drying step, these claims include an additional step of "placing at least one vapor barrier between said space and other space located within said new construction." '200 patent col. 6 ll. 46–48, ECF 7-3; *see* '688 patent col. 6 ll. 44–46, ECF 7-1. Plaintiff argues that CMHC's Guidelines are ambiguous about the use of a vapor barrier. MSJ Opp'n, ECF 35 at 22. The CMHC Guidelines teach that translucent sheathing membranes can be used to cover the opening of doors and windows to prevent entry of rain and snow, whether or not sheathing membranes for the rest of the wall are installed. Burton Decl. Ex. 1, ECF 21-1 at 96. The CMHC Guidelines on sheathing membranes are ambiguous, but Plaintiff's claims are also ambiguous by only specifying that the vapor barrier is placed between said space and other space located within said new construction. Plaintiff submits photos of Defendant allegedly using a vapor barrier on exterior doors and windows to support its claim that Defendant in fact uses vapor barriers in a manner that infringes the patent. Weisenberger Decl. Ex. B-2, ECF 38-1 at 114. Plaintiff has failed to present evidence to create a material dispute that the vapor barrier was not obvious in light of the CMHC guidelines.

Changing the location of a drying device, as described in claim 6 of the '200 patent, is obvious as a matter of common sense. Anyone who has dried a large space for a period of time with a fan, dehumidifier, or heater would notice that some areas have dried faster than others. By observing that phenomena, the obvious next step is to move the fan, dehumidifier, or heater from the drier area to the wetter area. Defendants need not cite a prior art reference to prove that this critical thinking skill predated Plaintiff's patent.

Based on the evidence before this Court, Defendants have met their burden to persuade this Court by clear and convincing evidence that Plaintiff's asserted claims are obvious in light of the prior art. Plaintiff's objective indicia of non-obviousness does not persuade this Court otherwise.

### F. Objective Indicia of Non-Obviousness

Objective indicia of non-obviousness include "copying" and the "commercial success" of the invention. *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012). Plaintiff argues that the objective indicia of non-obviousness rebuts Defendant's evidence. MSJ Opp'n, ECF 35 at 21 (citing Weisenberger Decl., ECF 38 ¶ 12). Plaintiff notes that it sent out notices in 2013 of its newly issued patents. Weisenberger Decl., ECF 38 ¶ 12. Several organizations opposed this effort. *Id.* Some associations asked members to identify prior art to invalidate the patent. *Id.* Another distributed a list of options to resist Plaintiff's licensing efforts. *Id.* Plaintiff alleges that many builders continue to use the drying process and that some clients have attested to their satisfaction with the drying process. *Id.* Plaintiff argues that this supports a finding of non-obviousness. *Id.*

Plaintiff has not presented evidence to create a dispute of material facts regarding the invention's commercial success. Plaintiff alleges that the clients are satisfied with the process. Plaintiff does not present evidence from any of its satisfied clients, and, even if it did, the fact

PAGE 13 – OPINION & ORDER ADOPTING F&R WITH CLARIFICATION

that the process is effective does not overcome obviousness. If anything, it just shows that Plaintiff's process is useful. Further, Plaintiff offered licenses to Oregon builders, but Plaintiff does not direct this Court to evidence that anyone besides Defendant paid for a license. Plaintiff has failed to present evidence creating an issue of material fact as to the invention's commercial success.

Plaintiff has not presented evidence to create a material dispute of fact regarding copying. Plaintiff included some of the communications from competitors after they received notice of Plaintiff's invention. *See* Weisenberger Decl. Ex. D, ECF 38-1 at 118–35. The Home Builders Association told its members "Savannah IP appears to claim that simply building according to the Oregon code causes a builder to violate its patent." *Id.* at 122. The National Association of Home Builders stated that its members were apoplectic over Plaintiff's patent and felt "like they've been drying out houses since they started building houses." *Id.* at 134. In short, Plaintiff has not produced evidence that could support a finding that the competitors copied Plaintiff's invention. There is no evidence these competitors knew about Plaintiff's design. The Court finds that the evidence Plaintiff presented for the invention's commercial success or copying of the invention do not create a material dispute of fact as to the invention's obviousness.

## CONCLUSION

This Court ADOPTS IN FULL Judge Armistead's F&R, ECF 57. This Court finds in the alternative that the asserted claims are obvious and invalid under § 103. Defendant's Motion for Summary Judgement, ECF 20, is GRANTED. Defendant's Motion to Dismiss, ECF 17, is DISMISSED AS MOOT.

**IT IS SO ORDERED.**

DATED this 5th day of February, 2026.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge